_____

Nos. 19-35017 and 19-35019
_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

ADREE EDMO, (a/k/a MASON EDMO),
Plaintiff-Appellee,

vs.

IDAHO DEPARTMENT OF CORRECTION, et al.,
Defendants-Appellants.
*and*
CORIZON, INC., et al.,
Defendants-Appellants.
_____

On Appeal from Orders of the United States District Court
For the District of Idaho
Case No. 1:17-cv-00151-BLW
_____

**PLAINTIFF-APPELLEE'S ANSWERING BRIEF**
_____

Lori Rifkin, Esq. [S.B. #244081]          Dan Stormer, Esq. [S.B. #101967]
Hadsell Stormer & Renick LLP          Shaleen Shanbhag, Esq. [S.B. #301047]
4300 Horton Street, #15                   Hadsell Stormer & Renick LLP
Emeryville, CA 94608                       128 North Fair Oaks Avenue
Telephone: (626) 585-9600             Pasadena, California 91103
Facsimile:  (626) 577-7079              Telephone: (626) 585-9600
Email: lrifkin@hadsellstormer.com   Facsimile: (626) 577-7079
                                                    Emails:  dstormer@hadsellstormer.com
                                                              sshanbhag@hadsellstormer.com

(Counsel continued on next page)

Attorneys for Plaintiff-Appellee, ADREE EDMO

Counsel continued from previous page:

Craig Durham (ISB # 6428)
Deborah Ferguson (ISB # 5333)
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, ID 83702
Telephone: 208-345-5183
Facsimile: 208-908-8663
Emails: chd@fergusondurham.com
        daf@fergusondurham.com

Amy Whelan, Esq. (CA # 215675)
Julie Wilensky, Esq. (CA # 271765)
NATIONAL CENTER FOR
LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
Telephone: 415-365-1338
Facsimile: 415-392-8442
Email: awhelan@NCLRights.org
        jwilensky@NCLRights.org

Attorneys for Plaintiff-Appellee, ADREE EDMO

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ...........................................................................iv

INTRODUCTION ........................................................................................1

STATEMENT OF JURISDICTION..............................................................5

STATEMENT OF THE ISSUES...................................................................5

STATEMENT OF ADDENDUM .................................................................6

STATEMENT OF THE CASE.......................................................................6

I. Ms. Edmo's Serious Medical Condition of Gender Dysphoria ......................7

II. Medical Standards for Treatment of Gender Dysphoria .................................9

III. Medical Necessity of Gender Confirmation Surgery for Ms. Edmo.............10

    A. Application of Medical Standards to Ms. Edmo's Serious Medical Need ........................................................................11

    B. The District Court's Assessment of Expert Opinions and Witness Testimony .....................................................................14

    C. Unreasonableness of Alternative Courses of Medical Treatment.......16

IV. Defendants' Deliberate Indifference in Denying Gender Confirmation Surgery to Ms. Edmo ......................................................................................18

V. The District Court's Preliminary Injunction Order........................................21

VI. Procedural History ........................................................................................22

SUMMARY OF ARGUMENT .........................................................................25

STANDARD OF REVIEW ...............................................................................29

ARGUMENT ..................................................................................................32

I.    The District Court Applied the Correct Legal Standard for
Mandatory Preliminary Injunctive Relief.........................................................32

II.    The District Court Properly Found that Plaintiff is Likely to Succeed
on Her Eighth Amendment Failure to Treat Claim ......................................34

    A.    Gender Confirmation Surgery is Necessary to Treat Ms. Edmo's
Serious Medical Need ........................................................................35

    B.    Defendants Acted with Deliberate Indifference in Denying
Ms. Edmo Gender Confirmation Surgery .........................................43

    C.    Defendants Have a *De Facto* Policy or Practice
of Refusing Surgery............................................................................46

III.    The District Court Found Severe and Extreme Irreparable Harm to
Ms. Edmo in the Absence of Gender Confirmation Surgery .......................49

IV.    The District Court Properly Determined That the Balance of
Hardships Weighs Heavily in Favor of Ms. Edmo and
Preliminary Injunctive Relief is In the Public Interest ................................52

V.    Defendants' Other Challenges to the District Court's Decision Are
Without Merit ..................................................................................................53

    A.    The Timing of the Evidentiary Hearing and Order Does Not
Constitute an Abuse of Discretion .....................................................53

    B.    The District Court's Order Complies With the PLRA ........................55

    C.    The District Court Did Not Convert the Preliminary
Injunction Hearing to a Final Trial on the Merits .............................66

CONCLUSION ............................................................................................................65

STATEMENT OF RELATED CASES .......................................................................66

CERTIFICATE OF COMPLIANCE.........................................................................67

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anderson v. Bessmer City*
470 U.S. 564 (1985)......................................................................................35

*Armstrong v. Schwarzenegger*
622 F.3d 1058 (9th Cir. 2010) ......................................................................59

*Beech Aircraft Corp. v. United States*
51 F.3d 834 (9th Cir. 1995) ..........................................................................43

*Bell v. Wolfish*
441 U.S. 520 (1979).......................................................................................37

*Bolker v. Comm'r*
760 F.2d 1039 (9th Cir. 1985) ......................................................................62

*Brown v. Lynch*
831 F.3d 1146 (9th Cir. 2016) ......................................................................31

*Brown v. Plata*
563 U.S. 493 (2011).........................................................................................1

*Cano v. Taylor*
739 F.3d 1214 (9th Cir. 2014) ......................................................................31

*Carlyn v. City of Akron*
726 F.2d 287 (6th Cir. 1984) ........................................................................64

*Caro v. Woodford*
280 F.3d 1247 (9th Cir. 2002) ......................................................................43

*Castro v. Cty. of Los Angeles*
833 F.3d 1060 (9th Cir. 2016) ......................................................................48

*Clouthier v. Cnty. of Contra Costa*
591 F.3d 1232 (9th Cir. 2010) ......................................................................48

*Columbia Pictures Indus. Inc. v. Fung*
710 F.3d 1020 (9th Cir. 2013) ......................................................................32

*Colwell v. Bannister*
    763 F.3d 1060 (9th Cir. 2014) ...................................................................*passim*

*CoxCom, Inc. v. Chaffee*
    536 F.3d 101 (1st Cir. 2008)..........................................................................65

*De'lonta v. Johnson*
    708 F. 3d 520 (4th Cir. 2013) ........................................................................40

*Doe v. Kelly*
    878 F.3d 710 (9th Cir. 2017) .........................................................................29

*Dream Palace v. Cty. of Maricopa*
    384 F.3d 990 (9th Cir. 2004) .........................................................................62

*Druley v. Patton*
    601 F. App'x 632 (10th Cir. 2015)................................................................41

*E. Bay Sanctuary Covenant v. Trump*
    909 F.3d 1219 (9th Cir. 2018) .......................................................................58

*Estelle v. Gamble*
    429 U.S. 97 (1976)....................................................................................1, 26

*Fields v. Smith*
    653 F.3d 550 (7th Cir. 2011) ...................................................................39, 60

*Fields v. Smith*
    712 F. Supp. 2d 830 (E.D. Wis. 2010) .........................................................60

*Garamendi v. Henin*
    683 F.3d 1069 (9th Cir. 2012) .......................................................................60

*Gary H. v. Hegstrom*
    831 F.2d 1430 (9th Cir. 1987) .......................................................................37

*Gibson v. Collier*
    No. 16-51148 (5th Cir. Mar. 29, 2019) .........................................................42

*Giles v. Kearney*
    571 F.3d 318 (3d Cir. 2009) ..........................................................................31

*Glisson v. Ind. Dep't of Corr.*
849 F.3d 372 (7th Cir. 2017) ...................................................................47, 48

*Goffman v. Gross*
59 F.3d 668 (7th Cir. 1995) ...........................................................................31

*Gomez v. Vernon*
255 F.3d 1118 (9th Cir. 2001) .......................................................................57

*Greger v. Barnhart*
464 F.3d 968 (9th Cir. 2006) .........................................................................63

*Hallet v. Morgan*
296 F.3d 732 (9th Cir. 2002) .........................................................................30

*Hamby v. Hammond*,
No. C14-5065 RBL-KLS,
2014 WL 4162542, at *1 (W.D. Wash. Aug. 21, 2014).........................33, 36

*Hawaii v. Trump*,
871 F.3d 646 (9th Cir. 2017) .........................................................................29

*Hicklin v. Precynthe*,
No. 4:16-CV-01357-NC,
2018 WL 806764 (E.D. Mo. Feb. 9, 2018) ......................................33, 39, 50

*Hicklin v. Precynthe*
No. 4-16-CV-01357-NCC,
Dkt. No. 176 (E.D. Mo. May 22, 2018) .........................................................40

*Hodgers-Durgin v. de la Vina*
199 F.3d 1037 (9th Cir. 1999) .......................................................................51

*Jelinek v. Capital Research & Mgmt. Co.*
448 F. App'x 716 (9th Cir. 2011).................................................................43

*Jett v. Penner*
439 F.3d 1091 (9th Cir. 2006) .......................................................................49

*K-Mart Corp. v. Oriental Plaza, Inc.*
875 F.2d 907 (1st Cir 1989).........................................................................62

*Katie A. v. Los Angeles Cty.*
481 F.3d 1150 (9th Cir. 2007) ..........................................................................30

*Keohane v. Jones*
No. 4:16-cv-511, 2018 WL 4006798 (N.D. Fla. Aug. 22, 2018)..................40

*Konitzer v. Frank*
711 F. Supp. 2d 874 (E.D. Wis. 2010) ...........................................................39

*Kosilek v. Spencer*
774 F.3d 63 (1st Cir. 2014).............................................................................42

*Lamb v. Norwood*
262 F. Supp. 3d 1151 (D. Kan. 2017) ............................................................41

*Long v. Cnty. of Los Angeles*
442 F.3d 1178 (9th Cir. 2006) ....................................................................7, 48

*Mabe v. San Bernardino County*
237 F.3d 1101 (9th Cir. 2001). Dkt. 13-1.......................................................47

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*
571 F.3d 873 (9th Cir. 2009) ....................................................28, 32, 49, 52

*Mason v. Ryan*
No. CV17-08098, 2018 WL 2119398 (D. Ariz. May 8, 2018) ...............33, 36

*McNearney v. Wash. Dep't of Corr.*,
No. C11-5930 RBL/KLS,
2012 WL 3545267, at *14 (W.D. Wash. June 15, 2012) ............33, 37, 39, 53

*Meanel v. Apfel*
172 F.3d 1111 (9th Cir. 1999) ........................................................................63

*Melendres v. Arpaio*
695 F.3d 990 (9th Cir. 2012) .....................................................................32, 53

*Mendia v. Garcia*
874 F.3d 1118 (9th Cir. 2017) 12 ...................................................................60

*In re Mercury Interactive Corp. Sec. Litig.*
618 F.3d 988 (9th Cir. 2010) .....................................................................62, 63

*Miller v. Bannister*
No. 3:10-cv-00614, 2011 WL 666106 (D. Nev. Feb. 9, 2011) ......................39

*Norsworthy v. Beard*
87 F. Supp. 3d 1164 (N.D. Cal. 2015)......................................................*passim*

*Oluwa v. Gomez*
133 F.3d 1237 (9th Cir. 1998) .......................................................................59

*Ortiz v. City of Imperial*
884 F. 2d 1312 (9th Cir. 1989) .....................................................................40

*Oyenik v. Corizon Health Inc.*
696 F. App'x 792 (9th Cir. 2017).................................................................47

*Plata v. Schwarzenegger*
603 F.3d 1088 (9th Cir. 2010) ......................................................................31

*Pouncil v. Tilton*
704 F.3d 568 (9th Cir. 2012) ........................................................................45

*Rosati v. Igbinoso*
791 F.3d 1037 (9th Cir. 2015) ...............................................................26, 38

*Singleton v. Wulff*
428 U.S. 106 (1976)......................................................................................62

*Smith v. Ark. Dep't of Corr.*
103 F.3d 637 (8th Cir. 1996) ........................................................................57

*Snow v. McDaniel*
681 F.3d 978 (9th Cir. 2012) ................................................................31, 38

*Soneeya v. Spencer*
851 F. Supp. 2d 228 (D. Mass. 2012)...........................................................19

*Stanley v. Univ. of S. Cal.*
13 F.3d 1313 (9th Cir. 1994) ........................................................................64

*Tibble v. Edison Int'l*
843 F.3d 1187 (9th Cir. 2016) ......................................................................62

*United States v. Hinkson*
   585 F.3d 1247 (9th Cir. 2009) (en banc) ................................................*passim*

*Valenzuela v. Michel*
   736 F.3d 1173 (9th Cir. 2013) ...................................................................35

*White v. McGinnis*
   903 F.2d 699 (9th Cir. 1990) .....................................................................64

*Whittaker Corp. v. Execuair Corp.*
   953 F.2d 510 (9th Cir. 1992) .....................................................................62

*Winter v. Nat. Resources Def. Council, Inc.*
   555 U.S. 7 (2008).......................................................................................52

## United States Constitution

Seventh Amendment ......................................................................................64

Eighth Amendment ..............................................................................*passim*

## Federal Statutes

Prison Litigation Reform Act,

18 U.S.C. § 3626(a)(1)(A) ...................................................................*passim*

## Federal Rules

Federal Rule of Appellate Procedure 12.1 ..........................................6, 59

Federal Rule of Civil Procedure 52 .....................................................6, 35

Federal Rule of Civil Procedure 60 .....................................................6, 60

Federal Rule of Civil Procedure 61 .....................................................6, 59

Federal Rule of Civil Procedure 62.1 ..................................................6, 60

Federal Rule of Civil Procedure 65 ........................................................45

## INTRODUCTION

A prison that fails to provide medically necessary treatment to a person in its care "is incompatible with the concept of human dignity and has no place in a civilized society." *Brown v. Plata*, 563 U.S. 493, 510-11 (2011). When a prison and its contractor deliberately violate established medical standards and withhold care from a person they know to be in serious need of treatment, "the courts have a responsibility to remedy the resulting Eighth Amendment violation." *Id.*; *see also Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). The District Court followed this well-established law by ordering preliminary injunctive relief in this case, given Defendant-Appellants' ("Defendants") deliberate denial of adequate medical treatment to Plaintiff-Appellee Adree Edmo ("Plaintiff") for her severe gender dysphoria. Defendants continue to withhold necessary treatment—gender confirmation surgery—even in the face of ongoing and life-threatening harm to Ms. Edmo, including two attempts to self-castrate.

Based on a three-day evidentiary hearing, including live testimony from all parties' experts, extensive documentary evidence following four months of discovery, and comprehensive pre- and post-hearing briefing, the District Court made the following findings: Ms. Edmo suffers grave, irreparable, and life-threatening harm as a result of Defendants' denial of medically necessary care for gender dysphoria, a serious medical condition for which the treatment protocol is

1

well-established; the medical standard of care for treating Ms. Edmo's gender dysphoria, based on her particular medical history and current condition, requires that she receive gender confirmation surgery; such surgery is safe and effective; there is no medically reasonable alternative treatment for Ms. Edmo's diagnosed medical condition; Defendants have been and continue to be deliberately indifferent in denying her this treatment; without such treatment, Ms. Edmo does and will continue to suffer irreparable harm; Defendants made no showing that providing such treatment to Ms. Edmo causes them injury; and it serves the public interest to ensure Ms. Edmo receives necessary medical treatment pursuant to the Constitution. The District Court re-affirmed its finding that Defendants' continued denial of treatment puts Ms. Edmo at substantial risk of extreme and serious harm when it denied Defendants' motion to stay the preliminary injunction pending appeal:

> The Court will offer just one more thought: Ms. Edmo's testimony and that of her experts conclusively established, in the Court's opinion, that there is a substantial risk that Ms. Edmo will make a *third* attempt to self-castrate if the Defendants continue to deny her gender confirmation surgery. In short, her medical needs are urgent. The Constitution requires Defendants to act accordingly.

SER 014.

Idaho Department of Correction ("IDOC") and Corizon Defendants agree that Ms. Edmo has gender dysphoria and that she suffers clinically significant distress as a result of this condition. IDOC and Corizon conceded during the

evidentiary hearing that it is appropriate to provide gender confirmation surgery when medically necessary to a person who is incarcerated. ER 386:4-12, 1016:12-14. In practice, however, neither IDOC nor Corizon, which services jails and prisons nationwide, has ever even referred an inmate with gender dysphoria for such surgery, much less provided it. Defendants offered medically and scientifically invalid excuses for refusing to provide Ms. Edmo this treatment, each of which the District Court carefully considered and rejected in a detailed 45-page order that weighed the evidence before it. The Court concluded:

> [Ms. Edmo] has presented extensive evidence that, despite years of hormone therapy, she continues to experience gender dysphoria so significant that she cuts herself to relieve emotional pain. She also continues to experience thoughts of self-castration and is at serious risk of acting on that impulse. With full awareness of Ms. Edmo's circumstances, IDOC and its medical provider Corizon refuse to provide Ms. Edmo with gender confirmation surgery. In refusing to provide that surgery, IDOC and Corizon have ignored generally accepted medical standards for the treatment of gender dysphoria. This constitutes deliberate indifference to Ms. Edmo's serious medical needs and violates her rights under the Eighth Amendment to the United States Constitution. Accordingly, for the reasons explained in detail below, IDOC and Corizon will be ordered to provide Ms. Edmo with gender confirmation surgery.

ER 004.

The District Court made thorough factual findings that considered Ms. Edmo's medical history, the testimony of all parties' medical experts regarding established medical guidelines and their application to Ms. Edmo, and Defendants' asserted justifications for denying surgery. These findings included the Court's

3

credibility determinations regarding the parties' experts, who each testified in person at the hearing. The Court found "credible the testimony of Plaintiff's experts," but found Defendants' experts "have very little experience treating patients with gender dysphoria other than assessing them for the existence of the condition," and accorded "virtually no weight to the opinions of Defendants' experts that Ms. Edmo does not meet the…criteria for gender confirmation surgery." ER 036 ¶¶ 23-24; ER 039 ¶ 32.

Granting in part Plaintiff's motion for a preliminary injunction, the District Court directed Defendants to "take all actions reasonably necessary to provide Ms. Edmo gender confirmation surgery as promptly as possible and no later than six months from the date of [its December 13, 2018] order." ER 045 ¶ 1. The Court further noted that "its decision is based upon, and limited to, the unique facts and circumstances presented by Ms. Edmo's case. This decision is not intended, and should not be construed, as a general finding that all inmates suffering from gender dysphoria are entitled to gender confirmation surgery." ER 004.

Defendants' appeal of the District Court's preliminary injunction order misstates the bases for the Court's ruling and attempts to relitigate its factual findings and credibility determinations. Because the Court applied the correct legal standards, made extensive factual findings that are fully supported by the record, and ordered relief that is narrowly tailored to remediate Ms. Edmo's grave

and unnecessary suffering, this Court should affirm the District Court's order.

## STATEMENT OF JURISDICTION

Plaintiff agrees with Defendants' statement of jurisdiction.

## STATEMENT OF THE ISSUES

Because Defendants' statement of the issues misrepresents the District Court's preliminary injunction order legally and factually, Plaintiff provides the following statement of issues:

1. Did the District Court apply the correct legal standard for a mandatory preliminary injunction?

2. Did the District Court abuse its discretion because its "findings of fact and its application of those findings of fact to the correct legal standard, were illogical, implausible, or without support in inferences that may be drawn from facts in the record?" *See United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

3. Does the preliminary injunctive relief ordered by the District Court directing Defendants to "take all actions reasonably necessary to provide Ms. Edmo gender confirmation surgery as promptly as possible and no later than six months from the date of this order," ER 045, violate the Prison Litigation Reform Act

("PLRA"), 18 U.S.C. § 3626(a)(1)(A)?

4. Did Defendants waive their arguments regarding purported procedural defects regarding the preliminary injunction proceeding by failing to raise them below?

5. If Defendants have not waived those procedural arguments, did the District Court abuse its discretion through the procedures it used to consider Plaintiff's motion for a preliminary injunction?

## STATEMENT OF ADDENDUM

Except for the following, all applicable constitutional provisions, statutes, and rules are set forth in the addendum filed with Defendants' opening brief (Dkt. 11-2):

Federal Rule of Appellate Procedure 12.1

Federal Rules of Civil Procedure 52, 60, 61, 62.1

## STATEMENT OF THE CASE

Defendants' statement of the case largely ignores the District Court's extensive factual findings and misconstrues the record, presenting the case as if it had not already been litigated below. Under the standard of review for a preliminary injunction, the Court of Appeal reviews the factual findings of the District Court for abuse of discretion, which requires deference to those findings unless they are "illogical, implausible, or without support in inferences that may be

drawn from facts in the record." *Hinkson*, 585 F.3d at 1251.[1]  The District Court

comprehensively evaluated the evidence presented by the parties, including the

continually-shifting rationales that Defendants offered to deny Ms. Edmo gender

confirmation surgery, *see* SER 083-086, and made detailed findings of fact based

on the record.

## I.      Ms. Edmo's Serious Medical Condition of Gender Dysphoria

Ms. Edmo is a transgender[2] woman who has been incarcerated since 2012.

It is undisputed that Ms. Edmo has been accurately diagnosed with gender

dysphoria since 2012.  ER 019 ¶ 36; ER 1513, 1515-1519, 212:16-18, 329:1-7,

647:23-648:3, 1047:20-1048:3.  Gender dysphoria is a serious medical condition

that is diagnosed  when the persistent incongruity between a transgender person's

---

[1] Defendants also include numerous factual misrepresentations irrelevant to the
Eighth Amendment medical treatment issue before the Court of Appeal, such as
information about Ms. Edmo's underlying criminal conviction and prison
disciplinary history.  It is undisputed that Defendant Eliason—the Corizon
psychiatrist who assessed Ms. Edmo for gender confirmation surgery in 2016—did
not review Ms. Edmo's prior criminal record, disciplinary history, or presentence
investigation reports as part of his assessment. ER 025 ¶ 60; ER 162:4-18, 165:7-
22.  Photographs of Ms. Edmo prior to 2012 are similarly irrelevant to the question
of what treatment is medically necessary now to treat Ms. Edmo.  *See* ER 019 ¶¶
35-38; ER 1075:1-1076:2; SER 282.  Defendants diagnosed Ms. Edmo with gender
dysphoria in 2012, have never withdrawn or contested that diagnosis, and have
documented her consistently feminine appearance and manner for the past seven
years.  ER 035 ¶ 20; ER 019 ¶¶ 36, 38.
[2] A transgender person is one "whose gender identity is not congruent with their
assigned gender."  ER 004 at ¶ 1; ER 1028:5-11.  At birth, infants are classified as
male or female based on visual observation of their external genitalia. This is a
person's "sex assigned at birth," but may not be their gender identity.

assigned sex, on the one hand, and the person's gender identity, on the other, is so severe that it causes clinically significant distress or impairs the person's ability to function. ER 002; ER 004-005 ¶¶ 1-2; ER 1028:5-14; 3069-3070; ER 035 ¶ 20. "Clinically significant distress" means that the distress impairs or severely limits the person's ability to function in a meaningful way and requires medical intervention, potentially including surgery. ER 006 ¶ 3; ER 1029:3-8.

Defendants have provided Ms. Edmo limited and insufficient treatment for her gender dysphoria; as a result, it is undisputed that Ms. Edmo's condition has not been fully remediated and she continues to suffer clinically significant distress. ER 020 ¶ 41; ER 296:1-297:4 593:7-24. While in the custody of IDOC, despite receiving some hormone therapy, Ms. Edmo has twice attempted to self-castrate to remove her testicles and eliminate testosterone from her body, first in September 2015, and next in December 2016. ER 002-003; 20-21 ¶¶ 42-46; ER 3616 ¶ 31; ER 152:5-10, 155:18-24, 593:25-594:16, 594:25-595:13, 624:20-25; SER 249:15-250:16; ER 1776-1777; ER 3587 ¶ 74. Ms. Edmo has repeatedly requested evaluation and referral for gender confirmation surgery, consisting of orchiectomy and vaginoplasty. ER 009 ¶ 14; ER 3003. Defendants have formally considered the medical necessity of surgical treatment for Ms. Edmo only once, in April 2016, despite the continued inadequacy of other treatments and her repeated requests for evaluation. Defendants' refusal to provide this medically necessary care is

8

ongoing. *See* ER 022 ¶ 49; ER 1730; ER 024-025 ¶¶ 58-59; ER 815:1-10, 826:25-827:6.

## II. Medical Standards for Treatment of Gender Dysphoria

The District Court considered extensive evidence presented by the parties about the medical standard of care for the treating gender dysphoria, including expert reports and testimony. The Court found that the World Professional Association of Transgender Health Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People, Version 7 ("WPATH Standards of Care") "are the internationally recognized guidelines for the treatment of individuals with gender dysphoria." ER 006 ¶ 5; ER 684:7-23, 1020:6-20, 1096:16-24, 1097:1-25, 2939. Moreover, "[t]here are no other competing, evidence-based standards that are accepted by any nationally or internationally recognized medical professional groups." ER 036 ¶ 22. The Court found that the WPATH Standards of Care apply to incarcerated individuals and are endorsed by the National Commission on Correctional Healthcare as the standards of care for treatment of transgender prisoners. ER 006 ¶ 6; ER 1032:11-21, 3004; ER 016 ¶ 24; ER 0511, 513, 171:14-172:22; ER 036 ¶ 21.

The WPATH Standards of Care describe the well-established treatment modalities for gender dysphoria: changes in gender expression and role; hormone therapy to feminize or masculinize the body; surgical changes of primary or

9

secondary sex characteristics; and psychotherapy.  ER 007 ¶ 7; ER 2946-2947.[3]

Treatment for gender dysphoria depends upon the severity of the condition.  ER

002.  For some individuals with severe gender dysphoria, where hormone therapy

is insufficient, surgery is the only effective treatment and is medically necessary.

ER 002; ER 008-009 ¶¶ 12-13; ER 2991, 1146:23-1147:15; *see also* ER 3529 ¶ 51.

Gender confirmation surgery is safe and well-established.  ER 040 ¶ 36.

## III.   Medical Necessity of Gender Confirmation Surgery for Ms. Edmo

The WPATH Standards of Care set forth six eligibility criteria for gender

confirmation surgery: 1) Persistent, well documented gender dysphoria; 2)

Capacity to make a fully informed decision and to consent for treatment; 3) Age of

majority in a given country; 4) If significant medical or mental health concerns are

present, they must be well controlled; 5) Twelve continuous months of hormone

therapy as appropriate to the patient's gender goals; and 6) Twelve continuous

months of living in a gender role that is congruent with their gender identity.  ER

009 ¶ 14; ER 2997.  Based on evidence including expert testimony, the District

Court made factual findings about how these criteria are to be interpreted and

applied by medical professionals.  "Regarding the first criterion, 'persistent, well

documented gender dysphoria' is deemed to exist when the person has a well-

---

[3] Psychotherapy is not a precondition for gender confirmation surgery or for any of
the other forms of treatment.  ER 027 ¶ 63(e); ER 1076:23-1077:2.

10

established diagnosis of gender dysphoria that has persisted beyond six months."

ER 009 ¶ 15; ER 1033:21-1034:3. "Regarding the fourth criterion, the WPATH

Standards of Care make clear that the presence of co-existing mental health

concerns does not necessarily preclude possible changes in gender role or access to

feminizing/masculinizing hormones or surgery…Co-existing mental health issues

directly tied to an individual's gender dysphoria should not be considered in

assessing whether an individual meets the fourth WPATH criterion that significant

medical or mental health concerns must be well controlled." ER 009-010 ¶ 16; ER

2962, 295:11-296:2, 783:6-784:6, 794:2-18, 1149:1-14, 1149:24-1150:5; ER 3141-

3142 ¶¶ 30-33. "Regarding the sixth criterion—a twelve-month experience of

living in an identity-congruent role—the WPATH Standards of Care provide that

this is intended to ensure that the individual has had the opportunity to experience

the full range of different life experiences and events that may occur throughout

the year . . . An individual in prison can satisfy the criterion of living in a gender

role congruent with their gender identity." ER 010 ¶¶ 17-18; ER 2997, 278:16-25,

1040:16-1041:4.

A. **Application of Medical Standards to Ms. Edmo's Serious Medical Need**

The District Court made factual findings about the application of these

medical standards to Ms. Edmo based on the substantial record in this case,

11

including Ms. Edmo's medical records, expert reports, numerous declarations filed by Defendants, and in-court testimony from Ms. Edmo, Ms. Edmo's treating providers, and all parties' retained experts. Defendants conceded that Ms. Edmo meets four of the WPATH criteria but disputed that she meets "the fourth and sixth criteria—that any significant mental health concerns be well controlled and that she live twelve months in a fully gender-congruent role." ER 025 ¶ 61; ER 301:2-10, 333:14-334:25, 648:13-650:11, 1053:9-1056:3.

With respect to the fourth criterion, the Court found that "Ms. Edmo's gender dysphoria, not her depression and anxiety, is the driving force behind her self-surgery attempts." ER 026 ¶ 63(a); ER 649:3-9, 650:15-651:8, 1054:13-25, 1058:3-13, 1076:11-22, 1101:14-1102:11, 2961. Nor do Ms. Edmo's self-surgery attempts and cutting "indicate she has mental health concerns that are not well controlled. Rather, Ms. Edmo's recent cutting is [tension]-reduction behavior that she uses to prevent herself from cutting her genitals. Her self-surgery attempts indicate a need for treatment for gender dysphoria." ER 026-027 ¶ 63(b); 1076:11-22 (internal citations omitted). In other words, these behaviors reflect "that she has severe genital-focused gender dysphoria and is not getting medical necessary treatment to alleviate it," not co-occurring mental health concerns. ER 026 ¶ 63(a); ER 649:3-9, 650:15-651:8, 1054:13-25, 1058:3-13, 1076:11-22, 1101:14-1102:11, 2961. While IDOC Defendants claim that Ms. Edmo has the distinct mental health

12

condition of borderline personality disorder, the Court found that "[i]n the more than six years she has spent in IDOC custody, no Corizon or IDOC provider has ever diagnosed Ms. Edmo with borderline personality disorder. Defense expert Dr. Andrade is the first person to ever diagnose Ms. Edmo with borderline personality disorder, and he was unable to identify his criteria for this diagnosis of Ms. Edmo during his testimony. None of the other experts, including Defense expert Dr. Garvey, diagnosed Ms. Edmo with borderline personality disorder." ER 027 ¶ 63(c); ER 164:4-6, 332:16-22, 346:21-24, 757:18-758:3, 1109:24-1110:3, 1117:19-24. The Court further found that "Ms. Edmo has demonstrated the capacity to follow through with the postsurgical care she would require." ER 027 ¶ 63(d); ER 1077:3-8, 1147:23-1148:25.

With respect to the sixth criterion, the District Court found that "[f]or the six-plus years she has lived in prison, Ms. Edmo has consistently sought to present as feminine, despite living in an environment hostile to her efforts, and despite the disciplinary consequences she faces." ER 028 ¶ 64(a); ER 650:4-11, 1055:9-1056:3; see also ER 019-020 ¶¶ 38-39; ER 157:11-158:21, 590:24-591:5, 591:11-20, 597:24-598:10, 807:1-7, 1513, 1539, 1617, 1644, 1730, 3319-3320, 3332-3333, 3336, 3338-3339, 3344-3345, 3352-3354, 3359-3368, 3373-3376; SER 128:4-130:15, 152:22-154:11; ER 3613 ¶ 19.

**B.** **The District Court's Assessment of Expert Opinions and Witness Testimony**

In making its findings of fact, the District Court assessed each witness's experience, qualifications, opinions, and credibility. For example, the Court found that "[p]rior to evaluating Ms. Edmo, [Defendant's expert] Dr. Garvey had never conducted an in-person evaluation to determine whether a patient needed gender confirmation surgery," and "has never recommended that a patient with gender dysphoria receive gender confirmation surgery or done long-term follow-up care with a patient who has had gender confirmation surgery." ER 013 at ¶ 21(a), (b); ER 250:20-251:9, 252:10-14. The Court also found that Defendant's other expert, Dr. Andrade, "has never provided direct treatment for patients with gender dysphoria and has never been a treating clinician for a patient who has had gender confirmation surgery." ER 014 ¶ 22(a); ER 321:2-14, 341:8-14, 345:10-12. In contrast, Plaintiff's expert Dr. Ettner "has treated approximately 3,000 individuals with gender dysphoria, including evaluating whether gender confirmation surgery is necessary for certain patients," and "has extensive experience treating patients who have undergone gender confirmation surgery." ER 011 ¶ 19(a), (b); 1021:17-1022:13. Dr. Ettner is also "one of the authors of the WPATH Standards of Care, version 7." ER 011 ¶ 19; ER 1020:21-24; SER 328-336. Plaintiff's expert Dr. Gorton "has been the primary care physician for approximately 400 patients with

14

gender dysphoria . . . Dr. Gorton currently provides follow-up care for about thirty patients who have had vaginoplasty." ER 012 ¶ 20(a); SER 283-292; ER 633:4-12, 645:20-646:3.

Accordingly, the District Court found "credible the testimony of Plaintiff's experts Drs. Ettner and Gorton, who have extensive personal experience treating individuals with gender dysphoria both before and after receiving gender confirmation surgery," in comparison with Defendants' experts who "have very little experience treating patients with gender dysphoria other than assessing them for the existence of the condition," and do not have "any direct experience with patients receiving gender confirmation surgery." ER 036 ¶¶ 23-24. In light of this evidence, the Court accorded "virtually no weight to the opinions of Defendants' experts that Ms. Edmo does not meet the fourth and sixth WPATH criteria for gender confirmation surgery." ER 039 ¶ 32.

On appeal, Defendants do not dispute that the WPATH Standards of Care apply to evaluation of Ms. Edmo's medical need for surgery. Rather, they argue that Ms. Edmo's treating psychiatrist, Defendant Eliason, determined during his 2016 assessment that Ms. Edmo did not meet those standards. Dkt 13-1 at 13-14. The District Court specifically rejected this argument, finding that Dr. Eliason "did

not apply the WPATH criteria." ER 040 ¶ 35.[4]  The Court found that Dr. Eliason's testimony was "contradicted by his April 20, 2016 clinician notes," ER 024 ¶ 56; ER 145:1-12, 826:22-827:2, and that he "did not rely upon any finding that Ms. Edmo did not meet the WPATH criteria in concluding in his April 2016 assessment that she did not meet the criteria for gender confirmation surgery."  ER 026 ¶ 62; ER 156:3-157:10.  In the District Court proceedings, Defendants presented conflicting evidence as to whether they recognize, use, or apply the WPATH Standards of Care, either now or in the past.  *See* SER 086-088. After carefully reviewing the evidence, the Court found that Defendants did not, in fact, ever competently apply these standards to Ms. Edmo.  *See* ER 036-037 ¶¶ 23-27; ER 3004-3005.

### C.  <u>Unreasonableness of Alternative Courses of Medical Treatment</u>

The District Court also made specific factual findings as to the reasonableness of providing a different course of medical treatment for Ms. Edmo than gender confirmation surgery—i.e. for Defendants to continue to provide her only hormone therapy rather than surgery.  The Court found, "Ms. Edmo has achieved the maximum physical changes associated with hormone treatment.

---

[4] Defendants continue to assert that Dr. Eliason and the Management Treatment Committee applied WPATH criteria to deny Ms. Edmo gender confirmation surgery, even though the evidence showed that not a single clinician or the Committee contemporaneously documented doing so.  Dkt. 13-1 at 16; ER 736:24-738:5, 754:8-757:4, 2877-2879, 2883-2884.

However, Ms. Edmo continues to experience distress related to gender incongruence, which is mostly focused on her male genitalia." ER 020 ¶ 41; ER 296:1-297:4, 593:7-24; *see* ER 042 ¶ 46. Indeed, "Ms. Edmo was receiving hormone therapy both times she attempted to self-castrate." ER 021 ¶ 46; ER 624:20-25. Defendants have not identified interventions other than surgery that will further alleviate Ms. Edmo's gender dysphoria or desire to self-castrate. ER 020-021 ¶¶ 43-44; ER 152:5-10, 155:18-24; SER 249:15-250:16; ER 1776-1777.

The Court concluded, "[t]he risks of not providing gender confirmation surgery to Ms. Edmo include surgical self-treatment, emotional decompensation, and risk of suicide given her high degree of suicide ideation. If she is not provided with surgery, Ms. Edmo has indicated that she will try self-surgery again to deal with her extreme episodes of gender dysphoria. Given that Ms. Edmo made increasing progress on her first two self-surgery attempts, it is likely that Ms. Edmo will be successful if she attempts self-surgery again." ER 028-029 ¶ 67; ER 595:24-596:5, 660:13-22, 1058:24-1059:8; see also ER 042 ¶ 49 ("The Court is persuaded by Plaintiff's experts that, without surgery, Ms. Edmo is at serious risk of life-threatening self-harm."). The Court also rejected Defendants' contention that denial of surgery was for Ms. Edmo's "own good," finding that "[s]cientific studies indicate that the regret rate for individuals who have had gender confirmation surgery is very low," and "Ms. Edmo does not have any of the risk

17

factors that make her likely to regret undergoing gender confirmation surgery." ER 029 ¶ 68; ER 662:1-663:1, 1081:25-1082:12, 1143:16-1144:4.

## IV. Defendants' Deliberate Indifference in Denying Gender Confirmation Surgery to Ms. Edmo

The District Court made detailed factual determinations related to Defendants' deliberate indifference to Ms. Edmo's medical needs. The Court found, "Corizon's only written policy regarding gender dysphoria does not include gender confirmation surgery as a form of treatment," and "Corizon providers have never recommended gender confirmation surgery to a patient at any of the prisons where it provides medical services." ER 016 ¶¶ 25-26; ER 176:25-177:9, 183:20-23; 3892-3893. The Court also found that "[n]o individual in IDOC custody has ever been recommended for, or received, gender confirmation surgery," ER 017 ¶ 28; ER 718:21-719:3, 772:23-773:4, and the evidence suggests that Defendants have "a decided bias against approving gender confirmation surgery." ER 037 ¶ 27. In particular, Defendants have never approved or provided such surgery, ER 041 ¶ 40, chose an outlier in the medical field of gender dysphoria, Dr. Levine, to train their staff about treating gender dysphoria, ER 038-039 ¶¶ 29-31; ER 174:12-16, 1079:2-22, 1081:4-20, 1154:14-1157:1; SER 323-325, 327.1; ER 3052-3066, and adopted Dr. Levine's outlier approach to gender confirmation surgery. ER 040 ¶¶ 38-40.

Dr. Levine trained Corizon and IDOC staff, including all of Ms. Edmo's treatment providers, that gender confirmation surgery is "not conceived as lifesaving as is repairing a potentially leaking aortic aneurysm but as life enhancing as is providing augmentation for women distressed about their small breasts." ER 037-038 ¶ 28; ER 829:23-830:24; SER 298, 327. The Court determined that Dr. Levine "is considered an outlier in the field of gender dysphoria," and his "training materials do not reflect opinions that are generally accepted in the field of gender dysphoria," are "in opposition to the WPATH Standards of Care," and are not supported by any scientific studies or professional associations or organizations. ER 038 ¶¶ 29-30; ER 174:12-16, 1079:2-22, 1081:4-20, 1154:14-1157:1; SER 323-325, 327.1; ER 3052-3066; *see also Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1188-89 (N.D. Cal. 2015) (finding Dr. Levine's report and opinions not credible, relied on generalizations about gender dysphoric prisoners, included a fabricated anecdote, and were based on his "apparent opinion that no inmate should ever receive [gender confirmation surgery]"); *id.* at 1192; *Soneeya v. Spencer*, 851 F. Supp. 2d 228, 235 (D. Mass. 2012) (finding Dr. Levine's opinion regarding gender confirmation surgery contrary to the evidence and Standards of Care showing generally positive outcomes for most patients who have gender confirmation surgery). Plaintiff also established that Defendants affirmatively adopted Dr. Levine's positions, which

19

reject the medical standard of care, incorporating them into their own training materials for other IDOC and Corizon staff. *See* ER 040 ¶ 39; ER 039 ¶ 34; SER 088; ER 434, 461-462; SER 293-297, 299-327. These materials evidence Defendants' ongoing approach to assessing medical necessity for gender confirmation surgery, and their medically-unsupported reasons for continuing to deny surgery to Ms. Edmo over the past three years despite her persistent and urgent medical need.

Ultimately, the District Court held that, "Defendants have been deliberately indifferent to Ms. Edmo's medical needs by failing to provide her with available treatment that is generally accepted in the field as safe and effective, despite her actual harm and ongoing risk of future harm including self-castration attempts, cutting, and suicidal ideation." ER 040 ¶ 36. The Court found that the weight of the evidence demonstrates that the only adequate medical treatment for Ms. Edmo is gender confirmation surgery, and the decision not to address her persistent symptoms was medically unacceptable under the circumstances. ER 041 ¶¶ 41-42. Specifically, Defendants "misapplied the recognized standards of care for treating Ms. Edmo's gender dysphoria" (identifying Dr. Eliason's assessment as a specific example), "insufficiently trained their staff with materials that discourage referrals for surgery," "fail[ed] to provide her with available treatment that is generally accepted in the field as safe and effective, despite her actual harm and ongoing risk

20

of future harm including self-castration attempts, cutting, and suicidal ideation," "have a *de facto* policy or practice of refusing this treatment for gender dysphoria to prisoners," and "denied her the necessary treatment for reasons unrelated to her medical need.*"* ER 039-041 ¶¶ 33-41. Therefore, the District Court concluded:

> With full awareness of Ms. Edmo's circumstances, IDOC and its medical provider Corizon refuse to provide Ms. Edmo with gender confirmation surgery. In refusing to provide that surgery, IDOC and Corizon have ignored generally accepted medical standards for the treatment of gender dysphoria.

ER 004.

## V. The District Court's Preliminary Injunction Order

The District Court ordered Defendants "to provide Plaintiff with adequate medical care, including gender confirmation surgery. Defendants shall take all actions reasonably necessary to provide Ms. Edmo gender confirmation surgery as promptly as possible and no later than six months from the date of this order." ER 045; *see also* ER 001-002 ("For the reasons explained below, the Court…will order defendants to provide her with this procedure, a surgery which is considered medically necessary under generally accepted standards of care."); ER 004 ("IDOC and Corizon will be ordered to provide Ms. Edmo with gender confirmation surgery."). The Court specified the narrowness of its order, limiting the relief to the care necessary to obtain gender confirmation surgery for Ms. Edmo, and "not[ing] that its decision is based upon, and limited to, the unique facts and circumstances presented by Ms. Edmo's case. This Decision is not intended, and

21

should not be construed, as a general finding that all inmates suffering from gender dysphoria are entitled to gender confirmation surgery." *Id.* The Court found that the preliminary injunctive relief is in the public interest, ER 044 ¶ 57, and that "Defendants have made no showing that an order requiring them to provide treatment that accords with the recognized WPATH Standard of Care causes them injury." ER 043 ¶ 54.

## VI.    Procedural History

Ms. Edmo filed her lawsuit *pro se* on April 6, 2017, shortly after her second self-surgery attempt, seeking injunctive relief and damages for, *inter alia*, Defendants' failure to provide medically necessary treatment for gender dysphoria. ER 3823-3864. Ms. Edmo also moved for appointment of counsel. SER 426-434. On April 14, 2017, the Magistrate Judge screening prisoner complaints permitted her case to move forward and granted in part her motion for appointment of counsel. ER 3798-3799. The Court undertook to find pro bono counsel for Plaintiff. *Id.* Meanwhile, Ms. Edmo, while still proceeding *pro se*, filed a First Amended Complaint on May 17, 2017. ER 3711-3755.

Subsequently, Plaintiff's counsel filed appearances in June and August of 2017, ER 3705-3710, SER 420-425, and filed a Second Amended Complaint on September 1, 2017. ER 3634-3696. Defendants moved to dismiss Ms. Edmo's complaint on November 1, 2017. ER 3623-3628. The District Court heard

22

argument on Defendants' motions on April 4, 2018.  ER 3620-3622.  On June 7, 2018, the Court largely denied Defendants' motions to dismiss.  ER 3481-3504.

After filing the Second Amended Complaint, and during the pendency of Defendants' motions to dismiss, Plaintiff's counsel sought access to Ms. Edmo's medical records to assess the urgency of her medical needs.  SER 399.  Defendants refused to produce these records until the end of May 2018.  *Id.*  Because of the gravity of Ms. Edmo's medical condition, Plaintiff's counsel meanwhile retained two medical experts to evaluate Ms. Edmo and to review the incomplete medical records accessible to Ms. Edmo.  *Id.*  Based on the experts' assessments, Plaintiff moved for preliminary injunctive relief on June 1, 2018, seeking an order requiring immediate access to necessary medical treatment for gender dysphoria, including gender confirmation surgery.  *Id.*

On June 4 and 5, 2018, Defendants moved for extensions of time to respond to Plaintiff's motion, requesting six months to conduct discovery and file their response briefs.  SER 375-391.  On June 12, 2018, the District Court held a status conference to solicit input from the parties on how to proceed on Plaintiff's motion, given Plaintiff's allegations of irreparable harm, and Defendants' concern that a preliminary injunction ordering surgery would provide irreversible relief in the case.  ER 3457.  The Court then granted and denied in part Defendants' motion for extension, permitting fact and expert discovery focused on the preliminary

23

injunction issues for four months, and scheduling a three-day evidentiary hearing from October 10-12, 2018.  ER 3455-3456.  The parties filed a joint stipulation with discovery cut-offs and a briefing schedule on June 15, 2018, ER 3448-3452, and the Court entered a scheduling order on July 3, 2018.  ER 3445-3447.  No parties objected to the Court's orders or moved for reconsideration.

From June through September 2018, the parties engaged in extensive written discovery and conducted 13 depositions.  ER 3445-3447.  On September 14, 2018, Defendants submitted written response briefs to Plaintiff's motion, including their expert reports.  SER 337-374.  The evidentiary hearing spanned three full days and included testimony from fact and expert witnesses and submission of exhibits.  In addition, the Court allowed Defendants to submit declarations from witnesses not called during the hearing and considered evidence submitted in the pre-trial briefing.  The Court also directed the parties to submit proposed findings of fact and conclusions of law, and post-hearing briefs.  SER 036-281, ER 052-125.

On December 13, 2018, the District Court granted Plaintiff's motion for preliminary relief in part, ordering Defendants to provide Ms. Edmo surgery within six months of the order.  ER 045.  Defendants waited almost one month, until January 9, 2019, to move the District Court to stay its order pending appeal and opted not to follow the procedure to expedite their motion.  SER 022-035.  Defendants filed notices of appeal on January 9, 2019 but did not seek to expedite

the appeal.  ER 046-051.  On January 29, 2019, Defendants requested a 30-day extension to file opening briefs.  Dkt. 9.  This Court granted Defendants' motion, setting a new filing deadline of March 6, 2019.

On March 4, 2019, the District Court denied Defendants' motion for a stay. SER 012.  Four days later, despite numerous delays of their own making, Defendants filed an "urgent" motion for a stay in this Court, arguing that the Court must stay the injunction prior to their self-selected date of April 8, 2019.  Dkt. 15. The Court of Appeal granted the stay, and, pursuant to Plaintiff's request in consideration of Ms. Edmo's grave medical need, ordered the merits hearing expedited.  Dkt. 19.  Plaintiff moved for a modification of the stay to ensure that the pre-surgical consultation Defendants scheduled in April 2019 would proceed so that, should this Court affirm the order, the District Court's six-month clock for the surgery will not be reset to zero. Dkt. 22.  The Court of Appeal granted this modification.  Dkt. 30.

## SUMMARY OF ARGUMENT

Defendants' appeal relies on misstatements of law and the record.  Despite the well-established rule in the Ninth Circuit that the appellate court reviews preliminary injunctions for "abuse of discretion," Defendants argue that this Court should review the record—including the District Court's factual determinations— *de novo*.  Defendants then compound that error by asking this Court to make *de*

25

*novo* findings of fact that would contradict the well-grounded and detailed factual

determinations of the District Court based on the substantial evidence before it.

That is not the role of this Court, which, unless the District Court's findings of fact

were illogical, implausible, or without support in the record, must uphold the

District Court's findings, even if this Court would have weighed the evidence

differently. *Hinkson*, 585 F.3d at 1251.

The District Court correctly applied the standard for a mandatory

preliminary injunction to Plaintiff's motion, concluding, "both the facts and the

law clearly favor Ms. Edmo and extreme or very serious damage will result if [a

mandatory preliminary injunction] is not issued." ER 044 ¶ 57. In reaching the

conclusion that Ms. Edmo is likely to succeed on the merits of her Eighth

Amendment claim, the Court applied well-settled law regarding prison officials'

and medical providers' constitutional mandate to provide adequate and necessary

medical care to those in the prisons they run. Prison officials and medical

providers violate the Eighth Amendment when they are deliberately indifferent to a

prisoner's serious medical need by failing to treat her condition, and such failure

could result in further significant injury or the unnecessary and wanton infliction of

pain. *Estelle*, 429 U.S. at 104. The Eighth Amendment's prohibition on deliberate

indifference to serious medical need applies to all medical conditions, including

Ms. Edmo's medical condition of gender dysphoria. *See, e.g.*, *Rosati v. Igbinoso*,

791 F.3d 1037, 1040 (9th Cir. 2015) (per curiam) (holding that a transgender prisoner alleging deliberate indifference based on failure to provide gender confirmation surgery stated a claim under the Eighth Amendment).

The District Court made factual determinations about the applicable medical standard of care for treating gender dysphoria based on the evidentiary record. This record includes extensive expert testimony and reports, which the Court evaluated based on the experts' qualifications, experience, and credibility. The Court rejected Defendants' argument that surgery is just one of several acceptable treatment alternatives, finding that it is the only medically-established treatment appropriate for Ms. Edmo's medical need. Further, the District Court found that Defendants have a *de facto* policy or practice of refusing gender confirmation surgery to prisoners in contravention of the medical standard of care and the requirements of the Eighth Amendment, ER 040 ¶ 37; ER 041 ¶¶ 41-42, which "is the very definition of deliberate indifference." *See Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014).

The District Court's factual findings regarding deliberate indifference are reviewed for clear error. The District Court correctly determined that Defendants acted with deliberate indifference in refusing to provide Ms. Edmo with gender confirmation surgery because they ignored both the medical standard of care requiring such treatment and Ms. Edmo's suffering and risk of harm without it.

The District Court also found that, without surgery, Ms. Edmo will experience further serious harm, and be at high risk of self-castration and suicide. ER 042 ¶ 50; *see Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). By contrast, the Court found that Defendants made no showing that providing such treatment would cause them injury. Defendants do not dispute the District Court's findings that the balance of equities tips in favor of Ms. Edmo, and an injunction is in the public interest.

Defendants' other challenges to the District Court's order are without merit. The Court did not abuse its discretion through the procedures it used to consider Plaintiff's preliminary injunction motion. The Court's order requiring Defendants to "take all actions reasonably necessary to provide Ms. Edmo gender confirmation surgery as promptly as possible and no later than six months from the date of [its] order," is narrowly tailored to address the specific injury at issue, extends no further than necessary to correct the violation of Ms. Edmo's Eighth Amendment right to adequate medical treatment, and is the least intrusive means necessary to correct the harm. The District Court also found that Defendants made no showing that providing this surgery to Ms. Edmo will adversely impact public safety or the operation of the criminal justice system.

Finally, the District Court did not "convert[] the preliminary injunction hearing to a final trial on the merits," as Defendants contend. Dkt. 13-1 at 61-65.

28

The District Court's order is clear that it is an order for preliminary injunctive relief. In addition, the Court provided the parties ample opportunity to weigh in during the proceedings below as to whether it should instead treat the hearing as a final determination on the merits. Defendants did not address the District Court's repeated requests to address this issue and are precluded from raising it for the first time on appeal.

## STANDARD OF REVIEW

This Court reviews a district court's preliminary injunction for "abuse of discretion" under an objective two-part test: first, "whether the district court identified the correct legal standard for decision of the issue before it," and, second, "whether the district court's findings of fact, and its application of those findings of fact to the correct legal standard, were illogical, implausible, or without support in inferences that may be drawn from facts in the record." *Hinkson*, 585 F.3d at 1251. This is a "significantly deferential test," *id.* at 1262, and "[i]f the district court identifies the correct legal standard, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case." *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (internal quotation marks and citation omitted); *see also Hawaii v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017) (per curiam) ("As long as the district court got the law right, it will not be reversed simply because [we] would have arrived at a

different result if [we] had applied the law to the facts of the case." (quoting *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1096 (9th Cir. 2002) (alterations in original))). This standard of review applies to both mandatory and prohibitory injunctions. *See Doe*, 878 F.3d at 714; *see also Katie A. v. Los Angeles Cty.*, 481 F.3d 1150, 1156 (9th Cir. 2007) (no abuse of discretion where district court, in issuing mandatory injunction, correctly described and applied the legal standard for mandatory injunctive relief).

Defendants err in arguing that the Court of Appeal "is to review the record *de novo* to determine if the law and facts clearly favored Ms. Edmo's Eighth Amendment claim." Dkt. 13-1 at 29. The single case they cite in support of this premise, *Hallet v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002), does not hold that the Court reviews the record *de novo*, as Defendants claim. Rather, *Hallet* stated: "The district court's factual findings regarding conditions at the Prison are reviewed for clear error. However, its conclusion that the facts do not demonstrate an Eighth Amendment violation is a question of law that we review de novo." *Id.* *Hinkson*, decided after *Hallet*, makes clear that a district court's "findings of fact and its application of those findings of fact to the correct legal standard" are not reviewed *de novo*, but, rather, for whether they are "illogical, implausible, or without support in inferences that may be drawn from facts in the record." 585 F.3d at 1251. The Court of Appeal stated that *Hinkson* reflected the Court's *en*

30

*banc* "clarification" of the abuse of discretion standard "and how it limits our power as an appellate court to substitute our view of the facts, and the application of those facts to law, for that of the district court." *Id.* at 1250-51.

*Hinkson* also holds that "if the district court's application of fact to law 'requires an inquiry that is essentially factual,' we review it as if it were a factual finding." 585 F.3d at 1259 (citation omitted); *see also Plata v. Schwarzenegger*, 603 F.3d 1088, 1093 (9th Cir. 2010) ("We review mixed questions of law and fact for clear error when the factual issues predominate."); 585 F.3d at 1264 (explaining that "considerations that are founded on the application of the fact-finding tribunal's experience with the mainsprings of human conduct" are essentially factual). Accordingly, the Ninth Circuit has determined that a district court's "finding of deliberate indifference involves a factual inquiry," and is reviewed for clear error. *Brown v. Lynch*, 831 F.3d 1146, 1150 (9th Cir. 2016); *see Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014) (noting that whether there was deliberate indifference was an issue for the "trier of fact" to determine); *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (same), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014); *see also Giles v. Kearney*, 571 F.3d 318, 322, 331 (3d Cir. 2009) (noting that district court's determination regarding whether there was deliberate indifference is reviewed for clear error); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995) (same).

31

**ARGUMENT**

**I.     The District Court Applied the Correct Legal Standard for Mandatory Preliminary Injunctive Relief**

In ordering Defendants to provide gender confirmation surgery to Ms. Edmo, the District Court correctly used the "more stringent" mandatory preliminary injunctive relief standard requiring that "both the facts and the law clearly favor the moving party and extreme or very serious damage will result." ER 030-31 ¶¶ 4-6 (citing *Marlyn*, 571 F.3d at 879). Applying that standard, the District Court ruled, "a mandatory preliminary injunction should issue because both the facts and the law clearly favor Ms. Edmo and extreme or very serious damage will result if it is not issued." ER 044 ¶ 57.

Defendants argue that "because the injunction grants Ms. Edmo permanent relief, this Court should apply the standard of review for a permanent injunction." Dkt. 13-1 at 29. This argument is immaterial because the Ninth Circuit reviews both preliminary and permanent injunctions under the same abuse of discretion standard. *Columbia Pictures Indus. Inc. v. Fung*, 710 F.3d 1020, 1030 (9th Cir. 2013).[5] In addition, preliminary injunctions, by their nature, often address

---

[5] Further, the case cited by Defendants for this proposition, *Melendres v. Arpaio,* 695 F.3d 990, 996 (9th Cir. 2012), specifically rejected those defendants' attempt "to style th[e] appeal as one from permanent injunctive relief" where the district court granted preliminary injunction relief.

circumstances where the relief ordered is "permanent" in that it cannot be reversed after it is executed. Such injunctions are typical, for example, in the context of First Amendment cases and, as here, Eighth Amendment cases regarding urgent medical issues. If Defendants' argument were correct, then courts would never be able to order preliminary injunctive relief requiring that prisoners receive medically necessary care, which they plainly may do. *See, e.g., Mason v. Ryan*, No. CV17-08098, 2018 WL 2119398, at *6 (D. Ariz. May 8, 2018) (granting in part preliminary injunction ordering Corizon to provide specialist-recommended treatment and medication); *Hicklin v. Precynthe*, No. 4:16-CV-01357-NC, 2018 WL 806764, at *15 (E.D. Mo. Feb. 9, 2018) ("*Hicklin I*") (granting in part preliminary injunction ordering defendants to provide plaintiff medically necessary treatment for gender dysphoria); *Norsworthy*, 87 F. Supp. 3d at 1195 (ordering defendants to "take all of the actions reasonably necessary to provide [plaintiff] sex reassignment surgery as promptly as possible"); *Hamby v. Hammond*, No. C14-5065 RBL-KLS, 2014 WL 4162542, at *1 (W.D. Wash. Aug. 21, 2014) (ordering preliminary injunction for surgical repair for hernia); *McNearney v. Wash. Dep't of Corr.*, No. C11-5930 RBL/KLS, 2012 WL 3545267, at *14 (W.D. Wash. June 15, 2012), *report and recommendation adopted*, 2012 WL 3545218 (W.D. Wash. Aug. 16, 2012), *and modified to address mootness concern*, 2013 WL 392489 (W.D. Wash. Jan. 31, 2013) (granting preliminary injunction ordering defendant to

33

arrange for plaintiff to be examined by outside specialists and authorize recommended treatment).  That relief is irreversible does not transform a preliminary injunction into a permanent one.

## II.    The District Court Properly Found that Plaintiff is Likely to Succeed on Her Eighth Amendment Failure to Treat Claim

The District Court analyzed Ms. Edmo's claim that Defendants are failing to provide her necessary medical treatment under well-established Eighth Amendment law.  ER 031-035 ¶¶ 8-19.  The District Court's 45-page order weighed the evidence, made extensive findings of fact, and applied the governing Eighth Amendment legal standard to conclude:

> Defendants have been deliberately indifferent to Ms. Edmo's medical needs by failing to provide her with available treatment that is generally accepted in the field as safe and effective, despite her actual harm and ongoing risk of future harm including self-castration attempts, cutting, and suicidal ideation.

ER 040 ¶ 36.

The District Court's ruling used the correct legal standard, and its findings of fact and applications of those facts to the law are not illogical, implausible, or without support in inferences that may be drawn from facts in the record.  *Hinkson*, 585 F.3d at 1251.  Defendants' argument that "[t]he district erred in granting Ms. Edmo injunctive relief because the law and facts on the record do not clearly favor her Eighth Amendment claim," Dkt. 13-1 at 31, misconstrues the standard of review on appeal; the Court of Appeal does not re-weigh the evidence and

34

credibility of testimony when the District Court has already done so. FED. R. CIV. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."); *see Valenzuela v. Michel*, 736 F.3d 1173, 1176 (9th Cir. 2013) (findings of fact turning on credibility determinations receive heightened deference in light of the fact finder's unique opportunity to observe demeanor of witnesses); *see also Anderson v. Bessmer City*, 470 U.S. 564, 565 (1985) ("When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings."). At its core, Defendants' appeal is an improper attempt to relitigate factual determinations by the District Court.

A. **Gender Confirmation Surgery is Necessary to Treat Ms. Edmo's Serious Medical Need**

Evaluating the evidence before it, the District Court determined that the medical standards of care establish that gender confirmation surgery is medically necessary to treat Ms. Edmo's gender dysphoria. ER 035-039 ¶¶ 20-32. The District Court concluded based on a well-developed record that the WPATH Standards of Care are the established and internationally-accepted medical standards of care for treatment of gender dysphoria. ER 036 ¶¶ 21-22; ER 006 ¶ 5; ER 684:7-23, 1020:6-20, 1096:16-24, 1097:1-25, 2939. The National Commission

on Correctional Healthcare, which Defendants point to as providing important licensure and standards for medical providers working in prisons, has specifically endorsed the WPATH Standards of Care as applying to incarcerated persons. *Id.*; ER 0511, 513, 265:4-10, 171:14-172:22. Defendants conceded that the WPATH Standards are the only accepted medical standard of care for treatment of gender dysphoria, ER 266:2-9, and offered no other competing evidence-based standards accepted by any nationally or internationally recognized medical professional groups. ER 036 ¶ 22. In fact, Defendants argued that Defendant Eliason used the WPATH standards when assessing Ms. Edmo for surgery. *See, e.g.,* Dkt. 13-1 at 13-14. The District Court found, however, Defendant Eliason did not apply the WPATH criteria, ER 026 ¶ 62; ER 156:3-157:10; ER 040 ¶ 35, and he admitted under oath that he does not know where he came up with the "criteria" he used to assess Ms. Edmo's need for gender confirmation surgery in 2016. ER 164:9-165:2.

Determinations about applicable medical standards of care are factual determinations regularly and properly made by district courts considering Eighth Amendment claims, including for mandatory preliminary injunctions. *See, e.g., Mason*, 2018 WL 2119398, at *6 (ordering Corizon to provide specialist-recommended treatment); *Hamby*, 2014 WL 4162542, at *1, 8 (ordering surgery where court found it was the only effective treatment for plaintiff's hernia);

*McNearney*, 2012 WL 3545267, at *11-14, 16 (finding treatment plan medically

unacceptable and ordering specialist-recommended treatment). The District

Court's finding that the WPATH Standards of Care reflect the medical and

scientific consensus for gender dysphoria treatment does not constitute a

"wholesale adoption" of "model standards," but, rather, applies the only

established medical standard of care to determine whether the course of treatment

Defendants chose could reasonably be considered medically appropriate.[6]

The District Court rejected Defendants' contention that continuing Ms.

Edmo's same course of treatment—hormone therapy without surgery—was a

medically reasonable or acceptable alternative, given Ms. Edmo's ongoing and

undisputed severe clinical distress even after years of hormone therapy. ER 004;

ER 039-041 ¶¶ 33-41; *see, e.g., Colwell*, 763 F.3d at 1068 (reasonable jury could

find policy to require inmate to endure reversible blindness of one eye if he can

still see out of the other is deliberate indifference). By finding that Defendants'

denial of gender confirmation surgery to Ms. Edmo does not simply reflect

differences in professional judgment between two medically reasonable and

---

[6] Making use of the medical standard of care for determining necessary treatment is a far cry from the type of relief rejected in the case cited by Defendants, *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432-33 (9th Cir. 1987), or reliance on standards for different conditions than those at issue in a case, as in *Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979). The WPATH Standards of Care explicitly apply to incarcerated individuals. ER 006 ¶ 6; ER 1032:11-21, 1032:25-1033:12; ER 3004; ER 016 ¶ 24; ER 0511, 513, 171:14-172:22; ER 036-037 ¶¶ 21, 25-26; ER 3005.

acceptable alternatives, the District Court did not hold that "that Eighth

Amendment deliberate indifference can be established merely when a provider

does not strictly follow the WPATH guidelines," or that "if Dr. Eliason did not

strictly adhere to the WPATH guidelines, [his] decision was [ ] *ipso facto*

medically unacceptable." Dkt. 13-1 at 35.  Rather, the Court determined that the

WPATH Standards of Care reflect the well-established medical consensus and

considered whether Defendants' treatment of Ms. Edmo's serious medical

condition was reasonable in the context of those medical standards.

The Court expressly found that Defendants disregarded accepted medical

standards and refused to provide Ms. Edmo with medically necessary care despite

their knowledge of her serious medical need.  ER 004; ER 039-041 ¶¶ 33-41; *see

also Rosati*, 791 F.3d at 1040 ("[Plaintiff] plausibly alleges her symptoms

(including repeated efforts at self-castration) are so severe that prison officials

recklessly disregarded an excessive risk to her health by denying SRS solely on the

recommendation of a physician's assistant with no experience in transgender

medicine."); *Colwell*, 763 F.3d at 1068 (holding that plaintiff could show

deliberate indifference by demonstrating that the course of treatment chosen "was

medically unacceptable under the circumstances and that the defendants chose this

course in conscious disregard of an excessive risk to plaintiff's health."); *Snow*,

681 F.3d at 987-89 (reversing summary judgment on plaintiff's Eighth

38

Amendment claim because a jury could find that the defendants' decision to treat

plaintiff "pharmacologically rather than surgically" over a period of years was

medically unacceptable); *Fields v. Smith,* 653 F.3d 550, 556 (7th Cir. 2011)

("[D]defendants did not produce any evidence that another treatment could be an

adequate replacement for hormone therapy."); *Hicklin I*, 2018 WL 806764, at *12

("[P]sychiatric care and counseling alone are constitutionally inadequate to address

Ms. Hicklin's gender dysphoria."); *McNearney*, 2012 WL 3545267, at *14 (by

offering plaintiff treatment "shown to be ineffective . . . Defendants have chosen a

course of treatment that is medically unacceptable under the circumstances, and

have done so in conscious disregard of an excessive risk to Plaintiff's health");

*Miller v. Bannister*, No. 3:10-cv-00614, 2011 WL 666106, at *4 (D. Nev. Feb. 9,

2011) ("Plaintiff has shown a likelihood of proving that a liver transplant will save

his life, and as such, is medically necessary . . . ."), *report and recommendation

adopted in relevant part*, 2011 WL 6660907 (D. Nev. Feb. 14, 2011); *Konitzer v.

Frank*, 711 F. Supp. 2d 874, 908 (E.D. Wis. 2010) (summary judgment

inappropriate where plaintiff's repeated self-castration attempts was evidence that

"what the defendants were doing to treat [plaintiff's gender dysphoria] was not

working").

Moreover, Defendants' provision of some limited treatment for gender

dysphoria to Ms. Edmo does not foreclose a finding of deliberate indifference if

39

additional treatment is medically required to avoid further substantial risk of serious harm. *See Ortiz v. City of Imperial*, 884 F. 2d 1312, 1314 (9th Cir. 1989) (holding that a plaintiff alleging deliberate medical indifference "need not prove complete failure to treat"); *Keohane v. Jones*, No. 4:16-cv-511, 2018 WL 4006798, at *20 (N.D. Fla. Aug. 22, 2018) ("[J]ust because Defendant provides some care, like counseling and hormones, doesn't mean this suffices as constitutionally adequate treatment."); *Hicklin v. Precynthe*, No. 4-16-CV-01357-NCC, Dkt. No. 176, at 6 (E.D. Mo. May 22, 2018) (*"Hicklin II"*) (observing that "providing [only] counseling and/or psychotropic medication to a severely gender dysphoric patient whose condition warrants medical intervention is a departure from the [WPATH] standards of care . . . [and] puts a person at serious risk of psychological and physical harm" in violation of the Eighth Amendment); *Norsworthy*, 87 F. Supp. 3d at 1187 ("Just because defendants have provided a prisoner with some treatment consistent with the Standards of Care, it does not follow that they have necessarily provided her with *constitutionally adequate* treatment.") (internal alterations omitted) (quoting *De'lonta v. Johnson*, 708 F. 3d 520, 526 (4th Cir. 2013)).

In sum, the District Court expressly found that Defendants' denial of surgical care to Ms. Edmo is not merely a disagreement between medical professionals as to two reasonable alternative courses of treatment, and that

withholding such medically necessary care is not justified by Defendants' provision of other medically insufficient treatment. The District Court further concluded Defendants denied necessary treatment to Ms. Edmo because her medical need "conflicted with a prison policy" not to provide surgery, "not because non-treatment was a medically acceptable option." *See Colwell*, 763 F.3d at 1070; ER 037-041 ¶¶ 27-42. The District Court's findings are well-grounded in the record and consistent with Ninth Circuit precedent in Eighth Amendment cases based on the denial of medically necessary care. Defendants' disagreement with the Court's determinations of fact is not a proper basis for reversal.

None of Defendants' cited cases regarding gender dysphoria undermine these principles. *Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015), and *Lamb v. Norwood*, 262 F. Supp. 3d 1151, 1158 (D. Kan. 2017),[7] are out-of-circuit cases by *pro se* prisoner plaintiffs who presented no expert evidence to the respective district courts about the meaning and application of the WPATH Standards of Care. Such cases were not binding on the District Court in this case, nor do they offer reliable evidentiary information about the use of the WPATH

---

[7] In *Lamb*, the Tenth Circuit revised its opinion specifically to omit earlier language that had concluded there is no governing medical consensus on the appropriateness of gender dysphoria treatment and suggested scientific advances in understanding of gender dysphoria treatment need not be considered. *Compare* 899 F.3d 1159, 1162 (10th Cir. 2018) *with* 895 F.3d 756, 759-60 (10th Cir. 2018).

Standards of Care by medical professionals.[8]  In *Kosilek v. Spencer*, 774 F.3d 63, 90 (1st Cir. 2014) (en banc), another out-of-circuit case, the court concluded that the defendants were not deliberately indifferent to a transgender prisoner's medical needs based on that court's determination that they chose between "two alternative courses of medical treatment" that "both alleviate negative effects within the boundaries of modern medicine."  In this case, however, the District Court found based on the extensive evidence before it that, for Ms. Edmo, hormone therapy is insufficient and "gender confirmation surgery is the only effective treatment and is medically necessary."  ER 009 ¶ 13; ER 1146:23-1147:15; *see also* ER 3529 ¶ 51.

The District Court's determinations about the credibility of Plaintiff's and Defendants' experts are well-supported by the record.  The Court found that Defendants' experts "have very little experience treating patients with gender

---

[8] Similarly, the Fifth Circuit's recent decision in *Gibson v. Collier*, No. 16-51148 (5th Cir. Mar. 29, 2019), was decided on a "sparse record" litigated at the district court level by a *pro so* prisoner plaintiff.  *Id.* at 10.  The majority's decision in that case is also procedurally and substantively defective as amply documented by the dissent. *Id.* at 24-51.  *Gibson* rejects the black letter Eighth Amendment standard for evaluating a failure to treat claim, *id.* at 50, as well as applying an unprecedented version of claim preclusion on steroids to block Ms. Gibson's case based on evidentiary findings by an out-of-circuit district court deciding a different case with entirely different litigants and facts, *see, e.g., id.* at 33-36 & 47.  *Gibson* is also wholly distinguishable from the instant case in terms of both procedural posture and the evidentiary record.  Here, the District Court granted a preliminary injunction in Plaintiff's favor, making extensive factual findings regarding prevailing medical standards and medical necessity based on substantial evidence presented by the parties, which this Court is required to treat with deference.

dysphoria other than assessing them for the existence of the condition" and that their opinions "appear to misrepresent the WPATH Standards of Care" and should be accorded "virtually no weight."  ER 036 ¶¶ 24-25; 039 ¶ 32.  Where a district court "carefully examine[s] the voluminous documents, extensive testimony, and conflicting expert opinions" and sets forth "clear and coherent reasons for relying on the testimony of [one party's] expert witnesses as credible and persuasive," there cannot be clear error.  *Jelinek v. Capital Research & Mgmt. Co.* 448 F. App'x 716, 719 (9th Cir. 2011) (mem. op.); *see also Caro v. Woodford*, 280 F.3d 1247, 1253 (9th Cir. 2002) (noting that "considerable deference" is given to a district court's determinations that "[expert] witnesses were qualified to draw such conclusions and that their testimony was credible"); *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 838 (9th Cir. 1995) (per curiam) ("An appellate court must be especially reluctant to set aside a finding based on the trial judge's evaluation of conflicting lay or expert oral testimony.").

## B. <u>Defendants Acted with Deliberate Indifference in Denying Ms. Edmo Gender Confirmation Surgery</u>

The District Court identified the correct legal standard for assessing objective and subjective deliberate indifference, *see* ER 031-035 ¶¶ 8-19, and made detailed findings about objective and subjective deliberate indifference on the part of IDOC Defendants, sued in their official capacities, and Defendants Corizon and

Dr. Eliason:

> With full awareness of Ms. Edmo's circumstances, IDOC and its medical provider Corizon refuse to provide Ms. Edmo with gender confirmation surgery.  In refusing to provide that surgery, IDOC and Corizon have ignored generally accepted medical standards for the treatment of gender dysphoria.  This constitutes deliberate indifference to Ms. Edmo's serious medical needs and violates her rights under the Eighth Amendment to the United States Constitution.

ER 004.  The Court found Defendants "misapplied the recognized standards of care for treating Ms. Edmo's gender dysphoria" (identifying Dr. Eliason's assessment as a specific example), "insufficiently trained their staff with materials that discourage referrals for surgery," and "fail[ed] to provide her with available treatment that is generally accepted in the field as safe and effective, despite her actual harm and ongoing risk of future harm including self-castration attempts, cutting, and suicidal ideation."  The Court also found that Defendants "have a *de facto* policy or practice of refusing this treatment for gender dysphoria to prisoners," and "denied her the necessary treatment for reasons unrelated to her medical need*."*  ER 039-041 ¶¶ 33-41.

Defendants argue, "the evidence in the record does not demonstrate that Dr. Eliason (or any of the Defendants) was acting in conscious disregard of an excessive risk to Ms. Edmo's health or that Dr. Eliason's decision to not recommend GCS was medically unacceptable."  Dkt. 13-1 at 32.  To the contrary, the District Court found deliberate indifference based on a robust evidentiary

record, including finding that Dr. Eliason's testimony at the hearing was contradicted by his own treatment records. ER 024 ¶ 56; ER 145:1-12, 826:22-827:2; ER 040 ¶ 35. The Court determined that Dr. Eliason did not apply medically acceptable standards to assess Ms. Edmo's medical necessity for gender confirmation surgery. ER 040 ¶ 35. The Court also found that IDOC and Corizon Defendants made medically unacceptable decisions regarding Ms. Edmo's care, "ignor[ing] generally accepted medical standards for the treatment of gender dysphoria," in conscious disregard of the risk to her health. ER 004; ER 040 ¶ 36; ER 041 ¶ 41.

Defendants ignore the Court's findings set forth *supra*, claiming that "[t]he facts in the record do not demonstrate any subjective deliberate indifference on the part of *any named individual defendant,*" Dkt. 13-1 at 49. Defendants also cite no law requiring the District Court to name with specificity each individual Defendant against whom the injunction issued. Rather, an injunction must state the reasons why it issued, state its terms specifically, and describe in "reasonable detail" the required acts. FED. R. CIV. P. 65(d)(1). All parties who receive actual notice of the injunction order are bound by the injunction, and the injunction is properly issued against Defendants who are "responsible for ensuring that injunctive relief [is] carried out, even if [they are] not personally involved in the decision giving rise to [the plaintiff's] claims." *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012). In

45

this case, Plaintiff properly sued the Director and Deputy Director of IDOC in their official capacities, the Warden in his official (and individual) capacity, and Corizon and Dr. Eliason, all of whom are responsible for effectuating the relief. *See* ER 3634-3696.

### C. Defendants Have a *De Facto* Policy or Practice of Refusing Surgery

The District Court's finding that "Corizon and IDOC have a *de facto* policy or practice of refusing [gender confirmation surgery] to prisoners" further supports its conclusion that Plaintiff is likely to succeed on the merits of her Eighth Amendment claim. ER 040-041 ¶¶ 37-42. Defendants' argument that this finding is "conclusory" and "erroneous" is, again, an unsupported disagreement with the District Court's assessment of the evidence. Dkt. 13-1 at 49-54. The Court's finding is well-grounded in the record. For example, the Court cited Defendants' retention of Dr. Levine to train their staff, Defendants' subsequent adoption of Dr. Levine's anti-surgery and anti-WPATH approach in their own internal training materials, Corizon's omission of any reference to gender confirmation surgery in its policy governing treatment of gender dysphoria, and both Defendants' failure to ever refer or provide any prisoner within their care with gender confirmation surgery. ER 040-041 ¶¶ 37-41; *see Colwell*, 763 F.3d at 1069 ("The NDOC's formal cataract-treatment policy . . . mandates 'case by case' consideration of

46

cataract treatment requests, taking into account an inmate's 'ability to function,'
but the evidence here shows that the NDCO denies cataract surgery as long as a
prisoner has one 'good' eye."); *Norsworthy*, 87 F. Supp. 3d at 1191 (finding
blanket policy barring surgery in light of evidence that prison's treatment
guidelines did not mention gender confirmation surgery as option and training
provided by Dr. Levine indicated that such surgery should never be provided to
incarcerated patients).

Further, Defendants do not provide any cogent support for their argument
that Corizon's Eighth Amendment liability is evaluated under the *Monell* standard
for municipal liability. Dkt. 13-1 at 49-50. Defendants cite only to *Mabe v. San
Bernardino County*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Dkt. 13-1 at 49-50.
*Mabe* addresses liability of a municipality for constitutional deprivations. Corizon
is a private for-profit corporation providing medical treatment to Ms. Edmo on
behalf of the State of Idaho, and Defendant Eliason is one of Corizon's official
decision-makers for provision of medical care in IDOC. *See Oyenik v. Corizon
Health Inc.*, 696 F. App'x 792, 794 n.1 (9th Cir. 2017) (mem. op.) (observing
Ninth Circuit has not stated that *Monell* or *respondeat superior* preclusion extends
to private entities acting on behalf of state governments); *Glisson v. Ind. Dep't of
Corr.*, 849 F.3d 372, 378-79 (7th Cir. 2017) ("As we and our sister circuits
recognize, a private corporation that has contracted to provide essential

government services is subject to *at least* the same rules that apply to public entities." (emphasis added)). *Monell* liability is also not narrowly restricted to the existence of a written policy, but, rather, may also be premised on a custom, deliberate choice by responsible officials to follow a course of action, or acts of omission that amount to official policy. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075-76 (9th Cir. 2016) (en banc); *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 149-51 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d at 1070; *see also Glisson*, 849 F.3d at 379-82 (citing *Long v. Cnty. of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006)). Even assuming the *Monell* standard applies to Corizon, the District Court explicitly found that Corizon and IDOC Defendants' "*de facto* policy or practice" of refusing to provide medically necessary gender confirmation surgery directly results in Defendants' ongoing violation of Ms. Edmo's constitutional rights.[9] ER 040-041 ¶¶ 37-42. This, as well as Corizon's years-long failure to provide Ms. Edmo necessary medical treatment, establishes Corizon's entity liability. *See Ovenik*, 696 F. App'x at 793-795.

---

[9] Defendants also did not offer any evidence in the proceedings below regarding their treatment of other patients with gender dysphoria that contradicts the District Court's findings of a *de facto* ban on surgery. *See Ovenik*, 696 F. App'x at 794-95; *Glisson*, 849 F.3d at 381-82 (Corizon may introduce evidence of its track record if it believes it will vindicate its decision not follow guidelines). In fact, Corizon has never recommended this surgery for a single patient at any of the prisons or jails where it provides medical services. ER 016 ¶¶ 25-26; ER 183:20-23.

**III. The District Court Found Severe and Extreme Irreparable Harm to Ms. Edmo in the Absence of Gender Confirmation Surgery**

The party seeking a mandatory preliminary injunction must establish a likelihood of extreme or very serious irreparable harm in the absence of relief. *Marlyn Nutraceuticals*, 571 F.3d at 879. In the context of an Eighth Amendment claim regarding denial of medical care, harm includes "further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citation omitted). As the District Court noted, "[t]he Ninth Circuit has repeatedly held that serious psychological harm, in addition to physical harm and suffering, constitutes irreparable injury." ER 041 ¶ 43.

The District Court found that Ms. Edmo experiences ongoing "clinically significant distress," meaning "the distress impairs or severely limits [her] ability to function in a meaningful way." ER 004-006 ¶¶ 1-3; ER 1028:5-14, 1029:3-8; ER 3069-3070; ER 019 ¶ 36; ER 1513, 1515-1519; ER 212:16-18, 329:1-7, 647:23-648:3, 1047:20-1048:3; ER 020 ¶ 41; ER 296:1-297:4 593:7-24; ER 042 ¶ 44-45. This distress includes continuing "to actively experience thoughts of self-castration" and, to avoid acting on them, "'self-medicat[ing]' by using a razor to cut her arm" in order to help "release the emotional torment and mental anguish she feels at the time." ER 021-022 ¶ 47; ER 593:21-24, 595:17-596:15. In the

absence of surgery, the District Court found Ms. Edmo "will suffer serious psychological harm and will be at high risk of self-castration and suicide." ER 042 ¶ 50; *see also Hicklin I*, 2018 WL 806764, at \*9 (concluding that plaintiff would suffer "irreparable harm in the absence of a preliminary injunction because she suffers from depression, anxiety, and intrusive thoughts of self-castration as a result of Defendants' conduct"); *Hicklin II*, Dkt. No. 176 (granting permanent injunction); *Norsworthy*, 87 F. Supp. 3d at 1192 (irreparable injury where plaintiff testified that "she suffers continued and 'excruciating' 'psychological and emotional pain' as a result of her gender dysphoria"); *cf. Colwell*, 763 F.3d at 1068 ("[A]s long as the eye remains untreated [plaintiff] continues to suffer blindness in his right eye, which is harm in and of itself, along with all of the other harms and dangers that flow from that.").

In denying Defendants' motion for a stay, the District Court again emphasized the urgency and severity of the risk of grave harm to Ms. Edmo in the absence of the injunction: "[T]he Court is convinced that issuing the stay will substantially injure Ms. Edmo . . . Indeed, given Edmo's past actions, time is of the essence…In short, her medical needs are urgent." SER 014; *see also Hicklin* I, 2018 WL 806764, at \*31 (irreparable injury where plaintiff was at "severe risk of self-harm" in light of evidence that "she has a history of suicide ideation and has indicated on more than one occasion the inclination to remove her own testicles").

Defendants' claim that "the district court also erred because it granted the injunction without ever finding that the supposed irreparable harm would be 'immediate'" has no merit and misstates both the law and the facts. Dkt. 13-1 at 33. Defendants cite no authority for the proposition that a court granting a preliminary injunction must find that the irreparable harm would be "immediate." The only case Defendants cite, *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999), does not involve preliminary injunctive relief or otherwise support Defendants' argument. Rather, it considers the balance of federal equitable relief power and a state's administration of its own criminal laws. But even if Defendants' argument were correct, the District Court found that Ms. Edmo is suffering current and ongoing irreparable harm, in addition to being at substantial risk of future harm. ER 043 ¶ 53; ER 044 ¶ 57. Defendants argument thus misconstrues both the law and the record. It also demonstrates a persistent lack of understanding about the harm resulting from inadequately treated gender dysphoria, and what constitutes constitutionally cognizable harm.

Similarly, Defendants do not cite any authority for their argument that preliminary injunctions can address only "emergent" medical issues, and "[a] surgery for which a patient can wait up to six months for a consult with a surgeon cannot constitute an 'immediate' or 'urgent' procedure,'" and is therefore an inappropriate subject for a preliminary injunction. Dkt. 13-1 at 34. These

51

formulations are not the legal standard for a mandatory preliminary injunction: the standard requires that Plaintiff establish a likelihood of extreme or very serious irreparable harm in the absence of relief. *Marlyn Nutraceuticals*, 571 F.3d at 879. The District Court made extensive findings about the extreme and very serious irreparable harm Ms. Edmo experiences in the absence of gender confirmation surgery. Defendants also mischaracterize the relief ordered: recognizing the urgency of Ms. Edmo's need, the District Court ordered Defendants to provide such surgery as soon as possible, and no later than six months from the date of its order, understanding that Defendants would need some lead time to make arrangements for such surgery to take place.

## IV. The District Court Properly Determined That the Balance of Hardships Weighs Heavily in Favor of Ms. Edmo and Preliminary Injunctive Relief is In the Public Interest

Defendants do not challenge the District Court's findings regarding the third and fourth factors preliminary injunction factors: that the balance of equities tips in favor of Ms. Edmo, and the injunction is in the public interest. *See Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 22 (2008); ER 029 ¶¶ 1-2; ER 043-044 ¶¶ 51-57. The District Court determined Ms. Edmo satisfied the third factor because she "established that Defendants' refusal to provide her with gender confirmation surgery causes her ongoing irreparable harm" and "Defendants have

52

made no showing that an order requiring them to provide treatment that accords with the recognized WPATH Standard of Care causes them injury." ER 043 ¶¶ 53-54. The District Court also "[found] that a mandatory preliminary injunction is in the public interest" because "it is always in the public interest to prevent the violation of a party's constitutional rights," (quoting *Melendres*, 695 F.3d at 1002), and "the public has a strong interest in the provision of constitutionally adequate health care to prisoners," (quoting *McNearney*, 2012 WL 3545267, at *16). ER 043 ¶¶ 55-56.

Because Ms. Edmo satisfied all four preliminary injunction factors, and "because both the facts and the law clearly favor Ms. Edmo and extreme or very serious damage will result," ER 044 ¶ 57, the District Court did not abuse its discretion by issuing a mandatory preliminary injunction.

## V.    Defendants' Other Challenges to the District Court's Decision Are Without Merit

### A.    The Timing of the Evidentiary Hearing and Order Does Not Constitute an Abuse of Discretion

Defendants also challenge the preliminary injunction based on timing, making scattered arguments untethered to any legal standards or law. Defendants claim the injunction cannot stand because Plaintiff waited too long to seek it, or because the District Court waited too long to grant it, or because the District

Court's determination of the timing of the relief ordered was wrong, or because the District Court should have instead held a final trial on the merits within those six months. None of these assertions are legally supported, and they blatantly ignore the procedural history of this case: Plaintiff filed her motion for a preliminary injunction on June 1, 2018, and Defendants then requested an extension of six months just to file their opposition papers. SER 375-419. In response to Defendants' motion for this six-month extension, the District Court, after consulting with the parties, set forth a procedure that balanced Ms. Edmo's asserted medical need and right to move for preliminary injunctive relief with Defendants' request for additional time to develop their defense and evidentiary record, given the irreversibility of the relief sought (surgery). ER 3455-3456. Following the Court's order granting Defendants' motion for an extension in part, Defendants did not at any time raise any objection to the overall preliminary injunction procedures the District Court employed. Rather, in their joint opening statement at the evidentiary hearing, Defendants' counsel explicitly acknowledged that the Court had allowed "the opportunity to have the summer to perform some discovery so that we could prepare a defense and that we could tell the court the entire story here." ER 1001:21-24.

Nor did Plaintiff somehow waive her right to seek preliminary injunctive relief by withdrawing her *pro se* preliminary injunction motion after the

appearance of counsel, and then filing a new preliminary injunction motion after obtaining assessments by experts in treatment of gender dysphoria.  The only timing that is relevant to a preliminary injunction is whether a party suffers irreparable harm in the absence of relief.  Here, the District Court found that Ms. Edmo not only suffers irreparable and serious harm without surgery, but, also, that she "is at serious risk of life-threatening self-harm."  ER 042 ¶¶ 49-50.  The District Court based its finding in the evidentiary record, including testimony by Plaintiff's expert Dr. Gorton, who opined that Ms. Edmo should have surgery as soon as possible, and no later than six months.  ER 696:25-698:5; *see also* ER 1058:24-1059:12 (Dr. Ettner testified that without surgery, Ms. Edmo is at risk of surgical self-treatment and emotional decompensation, and at particular risk for suicide).  Defendants' repeated use of a single phrase from Dr. Gorton's testimony that it would be "kind of absurd" to look at gender confirmation surgery as an emergency surgery that requires being sent in an ambulance to the hospital, ER 697:6-23, does not contradict the District Court's order for surgery "as promptly as possible and no later than six months from the date of this order."  ER 045. Rather, Dr. Gorton's testimony supports the District Court's order and its findings as logical, plausible, and well-grounded in the evidentiary record.

B.    **The District Court's Order Complies With the PLRA**

The District Court's order satisfies the PLRA requirements that a court

"shall not grant or approve any prospective relief [with respect to prison conditions] unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A).  The Court specifically recognized and set forth the PLRA needs-narrowness-intrusiveness requirements for injunctive relief in its order.  ER 031 ¶ 7.  The Court made extensive findings reflecting its determination that gender confirmation surgery is necessary to correct the violation of Ms. Edmo's Eighth Amendment right to adequate medical treatment, and limited its order to the care necessary to obtain gender confirmation surgery as the least intrusive means to correct this violation.  The Court properly left it to Defendants' discretion to determine how to provide that surgery, and specifically ruled that the ordered relief is limited to Ms. Edmo, and the particular circumstances of her case.

With respect to the requirement that a court give substantial weight to any adverse impact on public safety or the operation of a criminal justice system, the District Court found that "Defendants have made no showing that an order requiring them to provide treatment that accords with the recognized WPATH standards of care causes them injury."  ER 043 ¶ 54.  The Court further found "that a mandatory preliminary injunction is in the public interest."  ER 043 ¶ 55.  Thus, the District Court satisfied the PLRA requirements for injunctive relief.  *See*

56

*Gomez v. Vernon*, 255 F.3d 1118, 1129 (9th Cir. 2001) (finding that the PLRA requirements are not substantially different from "the threshold findings and standards required to justify an injunction") (citing *Smith v. Ark. Dep't of Corr.*, 103 F.3d 637, 647 (8th Cir. 1996)).

Defendants misconstrue the District Court's order when they argue that it "is vague and overbroad" because the phrase "adequate medical care," "seemingly encompass[es] treatment of any medical issues that Ms. Edmo has, even those that were diagnosed after the issuance of the injunction." Dkt. 13-1 at 58-59. The District Court was clear as to the exact relief it ordered: provision of gender confirmation surgery to Ms. Edmo. *See* ER 001-002 ("For the reasons explained below, the Court…will order defendants to provide her with this procedure, a surgery which is considered medically necessary under generally accepted standards of care."); ER 004 ("Accordingly, for the reasons explained in detail below, IDOC and Corizon will be ordered to provide Ms. Edmo with gender confirmation surgery); ER 045 ("Defendants are ordered to provide Plaintiff with adequate medical care, including gender confirmation surgery. Defendants shall take all actions reasonably necessary to provide Ms. Edmo gender confirmation surgery as promptly as possible and no later than six months from the date of this order.").

Defendants also argue that the injunction extends further than necessary to

correct the violation of the federal right because it requires them to provide surgery even though Defendants "are not GCS surgeons" and "are at the mercy of the medical judgment and ethical obligations of a third-party GCS surgeon." Dkt. 13-1 at 59-60. Defendants' position that they cannot provide surgery because they are not surgeons, and that they are "at the mercy" of a third-party surgeon who may identify complications illustrates exactly why the District Court's use of the phrase "adequate medical treatment, including…" was appropriate and necessary. Adequate medical treatment includes Defendants' referral of Ms. Edmo to a qualified surgeon who can perform the surgery. *Cf. E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1256 (9th Cir. 2018) ("[T]he Government failed to explain how the district court could have crafted a narrower remedy that would have provided complete relief.") (internal quotation marks, citation, and alterations omitted). Defendants' alternative position—that by failing to employ certain types of medical specialists and/or having a policy of not contracting for certain services, they may avoid their obligation to provide necessary medical care—is the "very paradigm of deliberate indifference." *See Colwell*, 763 F.3d at 1063.

In short, Defendants cannot legitimately contest that the District Court's order satisfies the needs-narrowness-intrusiveness requirements, nor did Defendants present any less intrusive alternative to the District Court's order that would address the violation of Ms. Edmo's federal right to necessary medical

treatment.  *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1070–71 (9th Cir. 2010).  Indeed, Defendants complain in their brief that the Court's order provides *too little* guidance.  Dkt. 13-1 at 60 n.12.

To the extent Defendants argue that the District Court did not use the specific words of the PLRA in its findings of fact, this does not invalidate the injunctive relief because, as discussed *supra*, the Court's findings make clear that its order substantively complies with the PLRA requirements.  Thus, even if omission of the specific words were considered error, it would be harmless error under Federal Rule of Civil Procedure 61 because the injunction meets the mandates of the PLRA.  *See Oluwa v. Gomez*, 133 F.3d 1237, 1240 (9th Cir. 1998).

If this Court is inclined to find that the District Court's order must include an express enumeration that the injunctive relief "is narrowly drawn, extends no further than necessary to correct the violation, and is the least intrusive means necessary to correct the violation of the Federal right," this Court should remand the issue to the District Court under Federal Rule of Appellate Procedure 12.1 for the limited purpose of considering whether to amend its order in light of the PLRA requirements, while retaining jurisdiction over the appeal.  This procedure promotes judicial economy and is appropriate here given that time is of the essence

in ensuring Ms. Edmo receives necessary and life-saving medical treatment.[10]  *See Mendia v. Garcia*, 874 F.3d 1118, 1122 (9th Cir. 2017) 12 Moore's Federal Practice – Civil § 62.1.02-.03 (2019); 20 Moore's Federal Practice – Civil § 312.1.12; SER 014.

## C. The District Court Did Not Convert the Preliminary Injunction Hearing to a Final Trial on the Merits

The District Court did not rule that the evidentiary hearing was a final trial on the merits.  The District Court specifically applied the standard for a mandatory preliminary injunction in its order.  ER 030-031 ¶¶ 4-6.  Additionally, the Court, "[i]n an abundance of caution," given "the nature of the relief requested in this case, coupled with the extensive evidence presented by the parties over a 3-day evidentiary hearing," found that the evidence also satisfied the standard for a permanent injunction.  ER 031, n.1.

Before issuing the preliminary injunction, which included the alternative

_____

[10] In an abundance of caution, and because time is of the essence given Ms. Edmo's medical need, Plaintiff has also moved the District Court pursuant to Federal Rule of Civil Procedure 62.1 for an indicative ruling that it would modify its preliminary injunction order under Federal Rule of Civil Procedure 60(a) to make the express finding that the relief satisfies the injunctive relief requirements of the PLRA.  SER 003-011; *see Mendia*, 874 F.3d at 1122; *Garamendi v. Henin*, 683 F.3d 1069, 1079, 1081 (9th Cir. 2012); *cf. Fields v. Smith*, 712 F. Supp. 2d 830, 860 (E.D. Wis. 2010), *supplemented* (July 9, 2010), *aff'd*, 653 F.3d 550 (7th Cir. 2011).  The District Court has expedited its consideration of Plaintiff's motion, setting Defendants' opposition deadline as April 3, 2019, and Plaintiff's reply deadline as April 5, 2019.  SER 001-002.

permanent injunction analysis in a footnote,[11] the District Court explicitly afforded

the parties multiple opportunities to raise any concerns about whether the hearing

*should be* treated as a final trial on the merits, asking counsel to respond as to

whether a standard different from the mandatory preliminary injunction standard

applies.  ER 985:2-16.  Neither IDOC nor Corizon Defendants addressed the

Court's question during the evidentiary hearing.  At the conclusion of the hearing,

the Court again asked to hear from the parties as to whether the mandatory nature

of the relief required that the hearing be treated "as the final hearing on that issue,"

specifically requesting to hear "if there is some disagreement on that."  ER 365:13-

366:3.  Plaintiff responded that the relief should be issued as a mandatory

preliminary injunction.  ER 368:23-369:5.  Again, neither IDOC nor Corizon

Defendants addressed the Court's question about a "final hearing," either at the

evidentiary hearing, or in post-hearing briefing.  Nor did IDOC or Corizon

Defendants make any objection, at any time, to the overall preliminary injunction

proceedings.  Rather, Defendants explicitly acknowledged that the Court had

---

[11] Defendants misleadingly excerpt this footnote to assert that "the district court's
Order reflects that the court treated the hearing as a trial on the merits."  Dkt. 13-1
at 62.  In fact, as the District Court's order memorializes, in discussions with
counsel before the hearing, the Court "*expressed concern* that the nature of the
relief requested in this case, coupled with the extensive evidence presented by the
parties over a 3-day evidentiary hearing, effectively converted these proceedings
into a final trial on the merits of the plaintiff's request for permanent injunctive
relief."  ER 031 ¶ 6, n.1 (emphasis added).

allowed "the opportunity to have the summer to perform some discovery so that we could prepare a defense and that we could tell the court the entire story here." ER 1001:21-24.

Having never objected to the preliminary injunction procedures or responded to the District Court's questions about a final hearing, Defendants have waived this argument on appeal. Parties are not permitted to "lay in wait" regarding procedural or legal issues in the district court, raising them for the first time at the appellate level. *See, e.g., Tibble v. Edison Int'l*, 843 F.3d 1187, 1193 (9th Cir. 2016) ("'[A]n issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it.'") (quoting *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010)); *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992); *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985); *see also K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 914 (1st Cir 1989) ("A party cannot lay back, acquiesce in the merger of a preliminary hearing with a permanent one, and then protest the procedure for the first time after the case is decided adversely to it."). This rule is "essential" so that parties have the opportunity to present evidence and legal arguments before the district court. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *see also Dream Palace v. Cty. of Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2004) ("This rule serves to ensure that legal arguments are considered with the benefit of a fully developed

factual record, offers appellate courts the benefit of the district court's prior analysis, and prevents parties from sandbagging their opponents with new arguments on appeal."). Further, this principle affords the district court the opportunity to fully consider the issues before it and correct any errors. *See, e.g., In re Mercury*, 618 F.3d at 992. The appellate court "will only excuse a failure to comply with th[e waiver] rule when necessary to avoid a manifest injustice." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (quoting *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)).

Defendants cannot demonstrate any prejudice from the procedures used by the District Court, much less "manifest injustice." Defendants' complaint about the "significant time constraints" imposed on them are inaccurate, untimely, and disingenuous. Plaintiff was subjected to the same time constraints even though she had the burden of proof. Defendants did not object during any of the proceedings below to the time limits the Court set, which allotted each side eight hours to allocate how they wished. Defendants elected not to call multiple witnesses on their witness list, and, instead, spent approximately the same time cross-examining Plaintiff's three witnesses as examining their own four witnesses. Far from giving Defendants short shrift, the procedure the Court employed to consider Plaintiff's motion for preliminary relief—permitting four months for discovery, holding a three-day evidentiary hearing, allowing submission of declarations of witnesses

who were not called at the hearing, and extensive pre- and post-hearing briefing—

went beyond what is required, and does not constitute an abuse of discretion. *See*

*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1326 (9th Cir. 1994). Defendants did not

object to this procedure at any time below. *See id.* Nor can they demonstrate that

they were prejudiced by the hearing time limits, given that the Court considered

written declarations from witnesses Defendants chose not to call during the

hearing.

Finally, Defendants' claim that the District Court "violated Defendants'

right to a jury trial under the Seventh Amendment" is also wrong. As explained,

the District Court issued a preliminary injunction in this case. The Court has also

made clear that it intends to hold a final trial on the merits of Plaintiff's claims,

including Plaintiff's Eighth Amendment claims for monetary damages. SER 016-

021 (scheduling order). And, again, even if the District Court had consolidated the

preliminary injunction hearing with a trial on the merits, Defendants waived this

argument by failing to raise it at any point in the lower court proceedings, even in

response to direct invitation from the District Court. *See White v. McGinnis*, 903

F.2d 699, 703 (9th Cir. 1990) ("A party's vigorous participation in a bench trial,

without so much as a mention of a jury, cannot be presumed the result of mere

inadvertence…"); *see also Carlyn v. City of Akron*, 726 F.2d 287 (6th Cir. 1984)

(where trial judge indicated he was going to consolidate hearing on temporary

restraining order and merits of case and no objection was entered until after the order issued, there is no merit to party's claim that they were deprived of right to jury trial); *CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 111 (1st Cir. 2008) (appellants waived right to jury trial where they "did not specifically object to the lack of a jury, and their conduct indicate[d] active participation both leading up to and during the bench trial.").

## CONCLUSION

The District Court did not abuse its discretion in ordering narrowly tailored preliminary injunctive relief to address the grave and life-threatening harm Ms. Edmo experiences in the face of Defendants' ongoing refusal to provide her desperately-needed medical treatment. The District Court identified the correct legal standards governing Ms. Edmo's motion for preliminary relief and made well-founded determinations of fact in support of its order. For the reasons set forth above, this Court should affirm the District Court's order.

DATED: April 3, 2019
Respectfully submitted,
NATIONAL CENTER FOR LESBIAN RIGHTS
FERGUSON DURHAM
HADSELL STORMER & RENICK LLP


By: s/ Lori Rifkin
       Lori Rifkin
Attorneys for Plaintiff-Appellee

# STATEMENT OF RELATED CASES

There are no related cases pending in this Court.

DATED: April 3, 2019      Respectfully submitted,

NATIONAL CENTER FOR LESBIAN RIGHTS
FERGUSON DURHAM
HADSELL STORMER & RENICK LLP


By: _s/ Lori Rifkin_____
      Lori Rifkin
      Dan Stormer
      Shaleen Shanbhag
Attorneys for Plaintiff-Appellee

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 19-35017 and 19-35019

I am the attorney or self-represented party.

**This brief contains** | 15,392 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◉ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ◉ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [         ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Lori Rifkin     **Date** | 04/03/2019

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                    *Rev. 12/01/2018*